**J. Z. WOOLRIDGE et al., Appellants,**

v.

**Robert FOLSOM, Individually and as Mayor of the City of Dallas, Appellee.**

**No. 19491.**

Court of Civil Appeals of Texas, Dallas.

March 31, 1978.

Edward B. Cloutman, III, Mullinax, Wells, Mauzy & Baab, Inc., Dallas, for appellants.

Lee E. Holt, City Atty., Joseph W. Geary, Jr., Daniel C. Garner, Geary, Stahl, Koons, Rohde & Spencer, Dallas, for appellee.

GUITTARD, Chief Justice.

The principal question in this case is whether the district court has jurisdiction of a suit by residents of the city of Dallas against the mayor to nullify certain contracts of the city on the ground of a conflict of interest on the part of the mayor. The trial court dismissed for want of jurisdiction, and we affirm.

Plaintiffs base their suit on the following provisions of article 988 of the Texas Revised Civil Statutes (Vernon 1963):

No member of the city council, or any other officer of the corporation, shall be directly or indirectly interested in any work, business or contract, the expense,

price or consideration of which is paid from the city treasury, or by an assessment levied by an ordinance or resolution of the city council.

The trial court held that this statute applies only to municipalities incorporated under the general laws of the state,[1] not to those with home-rule charters adopted under article XI, section 5, of the Texas Constitution, and that the matter of conflicts of interest on the part of municipal officers is completely covered by the charter of the city of Dallas and ordinances enacted pursuant to the charter, particularly the city's code of ethics for municipal officers. On this appeal, plaintiffs' only point of error is that the trial court erred in holding that article 988 has no application to officials of the city of Dallas.

We agree with the decision of the trial court. Comparison of article 988 with applicable provisions of the charter and the code of ethics for municipal officers reveals that the statute contains nothing that is not also covered by the charter and the code, whereas the charter and the code contain specific provisions, both procedural and substantive, not found in article 988. The pertinent provision of the charter is chapter XXII, section 11, as follows:

No officer or employee shall have any financial interest, direct or indirect, in any contract with the city, or by financially interested, directly or indirectly in the sale to the city of any land, materials, supplies or services, except on behalf of the city as an officer or employee. Any violation of this section, with knowledge, express or implied, of the person or corporation contracting with the city shall render the contract involved voidable by the city manager or the city council. The alleged violations of this section shall be matters to be determined either by the trial board in the case of employees who have the right to appeal to the trial board, and by the city council in the case of other employees.

Also, chapter II, section 1, of the charter empowers the city council:

To provide a code of ethics by ordinance which shall be binding on all officers, employees, and elective and appointive officials as provided herein, setting out the acts, conduct and financial interest which shall be considered to be in conflict with the position they hold and providing the procedure for enforcing the same. This may be either in addition to, or incorporated into personnel rules and regulations as pertain to various employees.

Acting under these powers, the council has adopted by ordinance a code of ethics for municipal officers and employees, of which section 11–124 is pertinent:

The failure of any officer or employee to comply with or the violation of one or more of the standards of conduct set forth in this article, which apply to him, shall constitute grounds for expulsion, reprimand, removal from office or discharge, whichever is applicable. In the case of an employee of the city, disciplinary action and appeals therefrom shall be in conformance with procedures established by the city charter and personnel rules and regulations. Where no specific appeal procedure is otherwise prescribed, the appeal shall be to the trial board. In the case of a city councilman, the matter shall be decided by a majority of the remainder of the councilmen. In the case of members of boards or commissions, the matters shall be decided by the city council. The decision of these bodies shall be final in the absence of bias, prejudice or fraud.

Plaintiffs argue that although the statute contains no provision for the procedure by which the prohibition against conflicts of interest may be enforced, it implies the jurisdiction of a district court, at the in-

1. The statutes governing general-law cities are contained in title 28 of Tex.Rev.Civ.Stat.Ann. arts. 961 to 1269m (Vernon 1963), although some of the articles in title 28, by their terms, apply to all municipalities, and Chapter 13, arts. 1165–1182, apply specifically to home-rule cities. O'Quinn, "History, Status and Function of Cities, Towns and Villages," 2A Tex.Rev.Civ. Stat.Ann. XXVIII to XXXVIII (Vernon 1963).

stance of any resident of the city, to use its equitable powers to nullify any contract in violation of the prohibition against conflicts of interest, whereas the charter and code provisions, which specify certain procedures and prescribe certain penalties, limit enforcement measures to the specific remedies provided.

We cannot agree that article 988 authorizes a district court to employ its equitable powers to nullify municipal contracts, regardless of what the city charter and ordinances may provide.[2] On historical grounds, we agree with defendant's contention that article 988, like other articles in chapter 2 of title 28 of the Texas Revised Civil Statutes, apply only to general-law municipalities. O'Quinn, "History, Status and Function of Cities, Towns and Villages," 2A Tex.Rev.Civ.Stat.Ann. XXIX (Vernon 1963).

Plaintiffs concede that certain of the articles in chapter 2, like the provision for election of aldermen by wards (articles 977, 979), do not apply to home-rule cities. They argue, however, that article 988 is a regulatory statute stating a principle of public policy generally applicable to all municipalities, and consequently, must be applied to home-rule cities as well. We do not agree because if article 988 is merely a statement of a general principle, or a codification of the common law, it adds nothing to the more specific provisions of the charter and the code. Plaintiffs assert, however, that article 988 has implications that are not subject to definition and limitation by a home-rule charter. They contend, for instance, that it renders any contract contrary to its terms void and unenforceable, either by the city or by the other contracting party. The charter provides, on the other hand, in chapter 22, section 11, that any such contract shall be "voidable by the city manager or the city council," and section 2–124 of the code provides that failure

of any officer to comply with the prescribed standard of conduct "shall constitute ground for expulsion, reprimand, removal from office or discharge," and further provides that in the case of a member of the city council, "the matter shall be decided by a majority of the remainder of the councilmen."

No provision can be found in article 988 that a conflict of interest must be dealt with by nullification at the instance of a citizen, as plaintiffs contend, rather than by avoidance of the contract at the election of the city manager or the council or by disciplinary action against the officer, or both, as the charter and code provide. We see no reason, therefore, why the people of the city, under the power granted to them by the home-rule amendment, cannot adopt their own method of dealing with the problem. We hold that the charter and code provisions are controlling and exclude any implication of a different remedy based on general principles to be found in article 988 or elsewhere.

Plaintiffs argue that the public interest would be better served by nullification of the contract by a court of equity. Even so, the public interest is a matter of legislative policy on which the people of the city have spoken directly by adoption of the charter and indirectly by the council's enactment of the code. Proper regard for the principle of separation of powers requires that courts be slow to interpose their own solutions for problems which have already been dealt with by proper exercise of legislative power. We need not decide whether equitable relief would be available if plaintiffs take their complaint to the city council and the council takes no action.

These considerations, in our view, justify the trial court's dismissal of the action for lack of jurisdiction. Whether the proper ground for the dismissal was failure of the petition to state a claim upon which equita-

2. No contention is raised here that plaintiffs lack standing to bring this suit because of failure to establish that they have a special private interest in the subject matter of the contracts in question different from that of the public generally. *See Scott v. Board of Adjustment,*

405 S.W.2d 55 (Tex.1966); *Hoffman v. Davis,* 128 Tex. 503, 505, 100 S.W.2d 94, 95 (1937); *First Nat'l Bank of Bellaire v. Prudential Ins. Co. of America,* 551 S.W.2d 112, 114 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n. r. e.).

ble relief could properly be granted, or lack of standing of plaintiffs to attack the contracts in question, rather than for want of potential jurisdiction of the subject matter in the strict sense, is a question we need not decide, since it does not affect disposition of the appeal.

Affirmed.